UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE ROLANDO GIRON-DIAZ,<br>Petitioner,<br>v.<br>TODD BLANCHE, *et al*.,<br>Respondents. | Case No. C26-2737-SKV<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Jose Rolando Giron-Diaz is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody and various forms of injunctive relief. Dkt. 1. Respondents filed a timely return to the petition (Dkt. 7), together with supporting declarations from their counsel, Barbara Andrade (Dkt. 8), and ICE Deportation Officer Kurtis Reed (Dkt. 9). Petitioner filed a traverse in reply. Dkt. 10. The Court having reviewed the parties' submissions, and the governing law, GRANTS in part Petitioner's petition for writ of habeas corpus.

//

//

## I. BACKGROUND

Petitioner is a native and citizen of Honduras who first entered the United States in 1996 without admission or parole. Dkt. 9, ¶¶ 4, 5. Petitioner was ordered removed on June 21, 2009, and was removed to Honduras on August 28, 2009. *Id.*, ¶¶ 5, 6. In the ensuing years, Petitioner unlawfully entered the United States multiple times and was removed pursuant to the prior removal order, most recently on March 4, 2013. *Id.*, ¶ 7.

Petitioner unlawfully entered the United States again on December 2, 2015, and the Department of Homeland Security ("DHS") reinstated his prior order of removal in accordance with 8 U.S.C. § 1231(a)(5). On that occasion, Petitioner expressed a fear of return to Honduras, and he was interviewed by an asylum officer. *Id.*, ¶ 8. Following the interview, United States Citizenship and Immigration Services determined that Petitioner had a reasonable fear of removal to Honduras, and he was placed in withholding-only proceedings before the immigration court. *Id.*, ¶ 9. On June 15, 2016, an immigration judge ("IJ") ordered Petitioner removed to Honduras, but granted Petitioner's application for withholding of removal under 8 U.S.C. § 1231(b)(3). *Id.*, ¶ 10.

On June 17, 2016, Petitioner was released on an Order of Supervision ("OSUP"), and on July 10, 2023, the Office of Enforcement and Removal Operations ("ERO") issued a new OSUP, which appears to have included an annual reporting requirement. *See* Dkt. 8, Ex. C at 1-2; Dkt. 9, ¶¶ 11, 12. On July 20, 2026, Petitioner reported to the ERO office in Miramar, Florida for his scheduled annual OSUP check-in at which time he was arrested. *See* Dkt. 8, Ex. C at 2; Dkt. 9, ¶ 14. Petitioner avers that when he inquired about the basis for his arrest, he was told by ICE officers that he was being detained pursuant to a "judge's order" to find a third country for his removal. Dkt. 1, ¶ 46. Petitioner claims he was never notified either orally or in writing that his

OSUP had been terminated. *Id.* Respondents have submitted a copy of a Notice of Revocation of Release issued on the date of Petitioner's arrest that reflects the notice was personally served on him that day, but he refused to sign it. *See* Dkt. 8, Ex. A. The notice indicated that Petitioner's release was being revoked pursuant to 8 C.F.R. § 241.4(l) because ICE had the "ability and means" to effectuate his removal.[1] Dkt. 8, Ex. A at 1; *see also* Dkt. 9, ¶ 13.

Officer Reed avers that following Petitioner's arrest he was provided an informal interview and given an opportunity to respond to the reasons for revocation of his OSUP, but he offered no response. Dkt. 9, ¶ 15. Respondents have submitted a copy of the informal interview form prepared following the purported interview, which reflects that Petitioner provided no oral or written statements during the interview, nor did he provide any documentation in response to the revocation. Dkt. 8, Ex. A at 3.

Petitioner was transferred to NWIPC on July 28, 2026, where he remains detained. Dkt. 9, ¶ 16. Petitioner avers that after arriving at NWIPC he was informed by ICE officers that they intended to execute his removal to Mexico (Dkt. 1, ¶ 46), though there is no evidence in the record that Petitioner was ever served with a Notice of Removal to Mexico. Officer Reed avers that ERO is "presently exploring third country removal options for Petitioner," but makes no mention of any specific country. Dkt. 9, ¶ 17. On July 30, 2026, Petitioner, through his immigration counsel, submitted a written request for a third-country fear screening in which he

[1] The Record of Deportable/Inadmissible Alien (Form I-213) prepared the day following Petitioner's arrest indicates that he was arrested because ERO determined through its "investigation" that he had violated the conditions of his OSUP. Dkt. 8, Ex. B at 2. This representation is obviously inconsistent with the justification set forth in the notice of revocation and with the information Petitioner says he was provided at the time of his arrest, and the Court presumes it is false as there is no evidence in the record suggesting that Petitioner ever violated the conditions of his release. *See id.*, Ex. A at 1; Dkt. 1, ¶ 46.

expressed his fear of removal to Mexico or "any other third country ERO may designate." *See* Dkt. 1, ¶ 48, Exs. 2-3. According to Petitioner, he has yet to be afforded any third-country fear screening. Dkt. 1, ¶ 49; Dkt. 10 at 8.

## II. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require," 28 U.S.C. § 2243.

## III. DISCUSSION

Petitioner asserts five claims in his petition: (1) his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001) (Dkt. 1 at 14-15); (2) his re-detention violated his right to due process because Respondents have provided no factual basis to believe that lawful removal to a third country will ever occur (*id.* at 15)[2]; (3) ICE violated its own regulations in revoking his OSUP (*id.* at 15-17); (4) ICE violated its own regulations and his due process rights by failing to provide him written notice of the country designated for his removal and the opportunity to apply for protection as to that country (*id.* at 18); and (5) ICE violated its own regulations by failing to provide him a reasonable fear screening in response to his expressed fear of removal to Mexico (*id.* at 18-19). Petitioner seeks

---

[2] Petitioner did not state this claim in a particularly clear fashion in his petition. The Court has construed the claim in the manner that appears most reasonable in light of the limited allegations contained within the claim and the content of Petitioner's briefing as a whole.

immediate release from custody, reinstatement of his prior OSUP, and various forms of injunctive relief relating to his removal from the United States. *Id.* at 19.

### A. Indefinite Detention

The Immigration and Nationality Act (INA) expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings. *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed and are subject to a final order of removal. Under § 1231(a), the Department of Homeland Security ("DHS") is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. §§ 1231(a)(1)(A), (a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision. 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. 533 U.S. at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the government is unable to meet its burden, then the noncitizen must be released from detention. *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Petitioner asserts, and Respondents concur, that he has been in ICE custody for a cumulative period of more than six months and, thus, that the presumptively reasonable six-month period has expired. *See* Dkt. 1, ¶ 56; Dkt. 7 at 7. Petitioner further asserts that there is no significant likelihood of his removal in the reasonably foreseeable future, an assertion which Respondents do not challenge. *See* Dkt. 1, ¶ 59; Dkt. 7 at 7. Notably, though Petitioner's OSUP was revoked purportedly because ICE had the "ability and means" to effectuate his removal (Dkt. 8, Ex. A at 1), Respondents' evidence reveals no concrete plan for Petitioner's removal, with Officer Reed averring only that "ERO is presently exploring third country removal options for Petitioner" (Dkt. 9, ¶ 17). As Respondents' offer no evidence or argument that Petitioner's removal is likely in the reasonably foreseeable future, the Court finds that Petitioner is entitled to habeas relief with respect to his indefinite detention claim, *i.e.,* release from confinement.

**B. Revocation of OSUP/Re-Detention**

Petitioner also claims that Respondents failed to comply with their own regulations in revoking his OSUP.[3] Dkt. 1 at 15-17. As explained above, after the 90-day removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision. *See* 8 U.S.C. § 1231(a)(6). "Once ICE releases a [noncitizen] on an OSUP, 'ICE's ability to re-detain that noncitizen is constrained by its own regulations.'" *Alfonso v. Bondi et al.*, 2026 WL 395326, at *3 (W.D. Wash. Feb. 12, 2026) (alteration in original) (quoting *Manivong v. Bondi,* 2025 WL 3211455, at *5 (C.D. Cal. Sept. 3, 2025)).

[3] The relief Petitioner seeks in relation to 8 U.S.C. § 241.4 is largely duplicative of that which he is entitled to under *Zadvydas*, *i.e,*, release from custody. Petitioner argues, however, that his regulatory non-compliance claim would, if successful, entitle him to additional relief; in particular, restoration of the status quo before his release was improperly revoked, including release under the OSUP in place at the time of his arrest. Dkt. 10 at 6 (citing *Gonzalez Llinas v. Scott*, 2026 WL 1429338, at *3 (W.D. Wash. May 21, 2026)). Petitioner argues that such relief is necessary here because ICE retained his belongings at the time of his arrest, including a copy of his OSUP, and transported him across the country from his home and family. *Id*.

At issue here is whether ICE's complied with 8 C.F.R. § 241.4, a regulation that governs the release and detention of noncitizens subject to final orders of removal. Petitioner's OSUP was revoked under § 241.4(l)(2), which authorizes designated officials to revoke release for various reasons, including that revocation is appropriate to enforce a removal order, *see* 8 C.F.R. § 241.4(l)(2)(iii), the reason cited in Petitioner's Notice of Revocation. Dkt. 8, Ex. A at 1. The only officials authorized to revoke release under § 241.4(l) are the Executive Associate Director ("EAD") of ICE, or an ICE Field Office Director ("FOD"). *See* 8 C.F.R. § 241.4(l)(2); *see also*, Dkt. 8, Ex. A at 2. A FOD is authorized to revoke release only when, in the FOD's opinion, "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the [EAD]." *Id.*

Petitioner asserts here that ICE failed to afford him an initial informal interview upon his return to custody as required by 8 C.F.R. § 241.4(l)(1), failed to provide him written notice of the reason for revocation, and failed to schedule him for the custody review required by 8 C.F.R. § 241.4(l)(3). *Id.*, ¶ 47. Petitioner further asserts that the decision to revoke his OSUP was not made by an official with authority to do so.[4] *Id.*

Respondents do not respond substantively to Petitioner's regulatory non-compliance claim, apparently because they erroneously construe the claim as one asserting a challenge to Petitioner's detention under the Administrative Procedure Act ("APA"). Dkt. 7 at 7. Respondents argue that the APA does not apply here because Petitioner has an adequate remedy for his alleged unlawful detention under § 2241. *Id.* The record makes clear, however, that

---

[4] Petitioner also asserts that he was arrested without a warrant in violation of 8 C.F.R. § 287.8(c)(2)(ii), and that his warrantless arrest did not comply with the procedures set forth in 8 C.F.R. § 287.3. As the Court concludes that Respondents failed to fully comply with the procedures under § 241.4(l) in revoking his supervised release, the Court need not address Petitioner's challenges to the manner in which ICE officers effectuated his arrest.

Petitioner did not assert an APA claim in his petition, a point he emphasizes in his traverse. *See generally* Dkt. 1; *see also* Dkt. 10 at 4.

While Respondents present no argument addressing the alleged deficiencies in the revocation process, the evidence in the record nonetheless rebuts some aspects of Petitioner's claim. For example, the evidence demonstrates that Petitioner was served with the Notice of Revocation of Release on the day of his arrest that identified the reasons for the revocation of his OSUP. Dkt. 8, Ex. A at 1-2. The evidence further demonstrates that Petitioner was afforded an initial interview on the day of his arrest, during which he offered no response to the reasons for the revocation. *Id.*, Ex. A at 3. And, to the extent Petitioner faults ICE for failing to schedule the custody review required by § 241.4(l)(3), it appears he has misinterpreted the regulation as it does not set forth a mandatory deadline for conducting such a review, it provides only that the review "will ordinarily be expected to occur within approximately three months after release is revoked." Petitioner's release was revoked just over six weeks ago and, thus, the custody review contemplated by § 241.4(l)(3) is not yet required.

While much of Petitioner's claim alleging regulatory non-compliance is not supported by the record, one portion of the claim is, *i.e.*, that his OSUP was revoked by an official who did not have authority to do so. The record demonstrates that the revocation of Petitioner's OSUP was authorized by the Acting Assistant FOD in Miramar, Florida, an individual not specifically identified in § 241.4(l)(2) as one authorized to take such action. Dkt. 8, Ex. A at 2. Even assuming an Acting Assistant FOD were permitted to substitute for a FOD for purposes of revoking an OSUP, an argument which Respondents do not make, this would still require findings be made that revocation was in the public interest and that circumstances did no

reasonably permit referral of the case to the EAD, *see* 8 C.F.R. § 241.4(l)(2), findings which do not appear in the current record.

The procedures set forth in § 241.4(l)(2) are "intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Hall v. Nessinger*, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026) (cited sources omitted). "Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful[.]" *Alfonso*, 2026 WL 395326, at *3 (quoting *Saengphet v. Noem*, 2025 WL 3240808, at *7 (S.D. Cal. Nov. 20, 2025) (collecting cases)); *accord Hall*, 2026 WL 18583, at *4 (". . . ICE violates a noncitizen's due process rights when the agency re-detains them and fails to comply with these revocation procedures."). The record makes clear that Petitioner's OSUP was revoked in violation of § 241.4(l)(2) because the official who revoked the OSUP was not authorized to do so. Petitioner's re-detention was therefore unlawful.

The remedy for unlawful re-detention is immediate release from custody restoring Petitioner to "the status quo before his release was improperly revoked." *Alfonso*, 2026 WL 395326at *6 (quoting *Hoang v. Noem*, No. 2026 WL 89319, at *5 (C.D. Cal. Jan. 12, 2026)). Accordingly, the Court finds that Petitioner is entitled not only to release from custody, but also to return of his identity documents and personal effects in order to fully restore his liberty and facilitate his travel home to Florida.

**C. Third-Country Removal/Requests for Injunctive Relief**

Finally, Petitioner claims that Respondents have violated their own regulations and his due process rights by failing to provide him notice or an opportunity to be heard as to his potential removal to Mexico or any other country they may designate. *See* Dkt. 1 at 18-19. Petitioner asserts that he has been provided no written notice of the designated country, no

opportunity to apply for protection as to that country, and no adjudication of the fear he has expressed. *Id.* at 18. He further asserts that though he has expressed a fear of removal to Mexico and has requested a reasonable fear determination as to that country, he has yet to be referred to an asylum officer for a reasonable fear screening. *Id.* at 18-19. These claims underlie Petitioner's requests for injunctive relief related to third-country removal. Specifically, Petitioner seeks an injunction prohibiting his removal to Honduras unless and until withholding of removal is terminated, and an injunction prohibiting his removal to any third country without providing notice and adequate opportunity to apply for withholding of removal, including review by an IJ. *Id.* at 19.

Respondents assert that Petitioner has not demonstrated any entitlement to permanent injunctive relief, arguing that his claims regarding removal to a third country before fear screening, or removal to Honduras without first terminating his grant of withholding of removal, lack any supporting factual or legal basis and therefore fail to establish Article III standing. Dkt. 7 at 8.

To the extent Petitioner seeks to enjoin Respondents from removing him to Honduras unless and until his order of withholding of removal is terminated, the Court concurs that Petitioner has established no factual basis for his request. Nothing in the record suggests that Respondents intend to remove Petitioner to Honduras and, in fact, Respondents make clear that ICE is currently exploring third country removal options for Petitioner. *See* Dkt. 9, ¶ 17. Any concern that Respondents will attempt to improperly remove him to Honduras appears purely speculative.

To the extent Petitioner claims that Respondents have violated their own regulations by not affording him a fear screening, despite him having served Seattle ERO with a written claim

of fear as to Mexico, nothing in the record demonstrates that Mexico has ever been formally designated as the country to which Respondents intend to remove him. Moreover, while Petitioner represents to the Court that he was informed by ICE officers that they intended to execute his removal to Mexico (Dkt. 1, ¶¶ 46, 75), he has also acknowledged that removal to Mexico is "legally unavailable" because removal of a non-Mexican national to Mexico requires the individual's consent, which Petitioner has withheld (Dkt. 10 at 3). Given that Mexico has not been formally designated as the country of removal and that Mexico apparently will not accept Petitioner given his lack of consent, there is no apparent need for a fear screening as to Mexico. Petitioner's claims alleging a violation of his due process rights and federal regulations based on Respondents' alleged failure to afford him a reasonable fear screening as to Mexico fail.

To the extent Petitioner intends to challenge more broadly Respondents' third-country removal policy and seeks to enjoin his removal to any third country absent adequate process, his claim is more tenable. *See* Dkt. 1 at 18-19. Respondents argue that there is nothing in the record to suggest that ICE would remove Petitioner without following the agency's required procedures, noting that ICE has indicated it will provide him written notice and an opportunity to be heard as to "any third country that has not provided diplomatic assurances that it will not persecute or torture deportees." Dkt. 7 at 10; Dkt. 9, ¶ 18.

As Petitioner correctly notes, Respondents have merely recited ICE's current third-country removal policy, a policy which courts in this District have repeatedly concluded violates due process. *See Baltodano v. Bondi*, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025); *see also Nguyen v. Scott*, 796 F.3d 703, 727-29 (W.D. Wash. 2025). In reaching these conclusions, the courts have relied on an earlier decision from this district, *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash.

2019). In *Aden*, the court held that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden*, 409 F. Supp. 3d at 1009. Citing to both the due process requirement that a petitioner be afforded "a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim," and to the statutory requirements of 8 U.S.C. § 1231, the *Aden* court held that in the context of a third-country removal, "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings] . . . is not an adequate substitute for the process that is due in these circumstances." *Id.* at 1010 (citations omitted). Rather, the court concluded, the removal proceedings must be reopened so that a hearing may be held. *Id.* at 1011. In *Nguyen*, the court noted that "[t]he requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country[,]" and held that the ICE's current policy governing third-country removals "contravenes Ninth Circuit law."

The Court finds no basis to deviate from the courts' reasoning in *Baltodano*, *Abukaka*, and *Nguyen*, and applies the same reasoning here. Thus, once Respondents have identified a country for Petitioner's removal, they must provide him written notice and a meaningful opportunity to respond in re-opened removal proceedings.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS:

(1) Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED in part;

(2) Respondents shall RELEASE Petitioner from custody **within 24 hours** of the issuance of this Order, subject to the same conditions that governed his release at the time he was re-detained, with his identity documents and personal effects;

(3) Respondents are PROHIBITED from removing Petitioner to a third country without providing him notice and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge.

(4) Respondents shall file a certification confirming that Petitioner has been released in accordance with this Order within **forty-eight (48) hours** of the issuance of this Order.

(5) Petitioner's remaining requests for injunctive relief are DENIED.

(6) Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED this 3rd day of September, 2026.

S. KATE VAUGHAN
United States Magistrate Judge